IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re

Dagburg, LLC,

                              Debtor.

In Chapter 11 Proceedings

Case No. 08-bk-02609-SSC

**MEMORANDUM DECISION RE: REAL ESTATE EQUITY LENDING, INC.'S, MOTION FOR RELIEF FROM STAY.**

## I.  Preliminary Statement

This matter came before the Court on a "Motion for Relief from Stay, or, Alternatively, for Entry of an Order Dismissing or Converting this Case to a Case Under Chapter 7," filed by Real Estate Equity Lending, Inc. ("REEL"), on June 5, 2008.  On June 6, 2008, REEL filed a "Declaration of Michael Coffman" in support of its Motion.  On June 26, 2008, the Dagburg, LLC, the Debtor herein, filed its "Response to Motion for Relief from Stay, or, Alternatively, for Entry of an Order Dismissing or Converting this Case to a Case Under Chapter 7."  On July 7, 2008, the Debtor filed a "Declaration of Clif Burgener" in support of its Response.  On July 15, 2008, the Court conducted a preliminary hearing at which both parties appeared and presented argument, at which time the Court deemed the matter under advisement.  This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052.  The Court has jurisdiction over this matter, and this is a core proceeding.  28 U.S.C. §§ 1334 and 157 (West 2007).

1

2     The Court must consider whether this matter should be set for a final hearing.

3 In determining whether to do so, the Court must conclude that the Debtor has the reasonable

4 probability of succeeding at a final hearing on the Motion.  11 U.S.C. 362(e);  United Sv.

5 Ass'n v. Timbers of Inwood Forest, 108 S.Ct. 626 (1988).  For the reasons set forth

6 hereinafter, the Court must vacate the stay at this time.

7     The Declaration of REEL in support of the Motion for Relief from Stay states

8 it provided financing to a third party who is not the debtor in these proceedings in the original

9 principal amount of $600,000.  This indebtedness is secured by certain deeds of trust on the

10 real property in Nevada (the "Property") which belongs to the third party.  As of May 22,

11 2008, the sum of $1,186,144.42 remained due and owing to REEL, without considering

12 attorneys' fees, costs, and expenses which may have accrued thereon.  Because of the third

13 party's failure to pay the indebtedness to REEL, said creditor commenced proceedings under

14 Nevada law to foreclose on its interest in the third party's Property.  The trustee's sale of the

15 non-debtor's Property was initially scheduled for March 14, 2008, and has apparently been

16 continued from time to time.  REEL notes that it is a private lender, with approximately 75

17 investors, and REEL has been required to pay said investors pursuant to its agreements with

18 them even though the third party has not made payments on the REEL indebtedness for a

19 prolonged period of time.

20     At the 341 Meeting of Creditors, the Debtor's principal acknowledged that

21 the Debtor has few creditors, no employees, and its only assets are interests in two separate

22 deeds of trust.  Of the creditors listed on Amended Schedule F, the Debtor concedes that Paul

23 Parry, with a claim of $2,000, and Security Title Agency, with a claim of $2,500 are the only

24 non-insider creditors.  Although the Debtor states that it initially received a 5 percent interest

25 in a deed of trust on the Property in November 2004, it did not record that interest in the

26 public records until shortly before it filed its bankruptcy petition.  According to the Debtor's

27 Amended Schedule A, the Debtor's assets are a 5 percent interest in the Deed of Trust on the

28

2

1 | Property and a third deed of trust on real property located in Prescott, Arizona.  The Debtor

2 | also listed a litigation claim against Lonestar Mortgage Services on Schedule B, in the amount

3 | of $75,000.  The Debtor does not report any income from its assets or from any other source.

4 | The Debtor does not appear to have liquid assets of any sort, or the means by which to get

5 | such funds from a third party.

6 |        The Debtor has submitted a current Declaration from its principal and an

7 | appraisal of the Property, from 2006, in support of its position that the stay should remain in

8 | place and that the Debtor should be entitled to a final hearing on the Motion for Relief from

9 | Stay.  The Declaration of the Debtor does not controvert the factual predicate that it has few

10 | creditors, no employees, the interest of the Debtor in the Property was recently recorded, that

11 | it receives no cash distribution from its interests in assets, or that it has little, if any, funding

12 | to proceed with any type of reorganization.  The Declaration simply states that the appraised

13 | value of the Property is $2,025,000, based upon the 2006 appraisal, and that the beneficiaries

14 | under the Deed of Trust, in which the Debtor has a 5 percent interest, are owed at least

15 | $2,400,000.  The Debtor simply asserts that the value of the Property exceeds the amount due

16 | and owing to REEL, that REEL is adequately protected by an equity cushion in the Property,

17 | and that the Property is necessary for an effective reorganization of the Debtor.  Counsel for

18 | the Debtor also stated, at the preliminary hearing on the REEL Motion, that the Ninth Circuit

19 | decision on In re Bialac, 712 F.2d 426 (9th Cir. 1983) supported its request that the automatic

20 | stay remain in place.

21 |        The Debtor assumes that it has the rights of a party that owns the Property.

22 | In fact, the Debtor simply owns a 5 percent interest in a Deed of Trust on the Property.  The

23 | Debtor conceded at the Preliminary Hearing on REEL's Motion that the parties to its Deed of

24 | Trust have separately scheduled a trustee's sale of the Property.  Assuming that the Debtor's 5

25 | percent interest in the Deed of Trust somehow allows it to control the other 95 percent

26 | interest, or that the Debtor and the other beneficiary or beneficiaries, are somehow in

27 | agreement as to how to proceed, the Debtor is essentially asking that REEL be stayed so that

28 |

3

the Debtor and other parties may proceed with their rights and remedies under Nevada law as to a non-debtor third party. The Debtor has cited no case law to support what the Debtor proposes. The Court sees no basis to allow a debtor to somehow set the playing field to allow it to acquire real property prior to, and in contravention of, the normal procedures that would be permitted to all creditors or third-party bidders at a trustee sale of a third party's real property under applicable state law. In other words, if there is to be a trustee's sale of the Property, the Debtor, REEL, and other interested parties should be able to proceed at that time. Why prefer one creditor over another?

More importantly, the Debtor assumes that it need only show that there is equity in the Property to proceed to a final hearing. That is not the case. In the decision of In re A Partners, LLC, 344 B.R. 114 (Bankr. E.D.Cal. 2006), the debtor did not own an interest in one of the real properties at issue.[1] The debtor held a note, secured by a deed of trust, as to real property owned by a related entity. The debtor's lien on this property was fifth in order of priority. The creditor with a senior lien had already commenced the non-judicial foreclosure proceedings under applicable state law. The senior lienholder was not listed as a creditor of the debtor and had not filed a proof of claim in the debtor's bankruptcy proceedings. The debtor had little cash, and could not exercise all of its rights as a junior lienholder under applicable state law. The debtor argued at the hearing on the motion for relief from stay by the senior lienholder that a party was willing to purchase the real property and, thus, pay all secured creditors with a lien thereon in full, including the senior lienholder and the debtor. Alternatively, the debtor argued that it should be able to proceed with its foreclosure, acquire the property, and then provide for the treatment of the secured creditors under its plan of reorganization. The Court disagreed with the debtor's position and vacated the automatic stay.

---

**1** The debtor did own another commercial building which was heavily encumbered.

4

1    In reviewing the debtor's interest in the deed of trust, the <u>A Partners</u> Court

2    stated that the debtor did not own the real property and that the debtor's bundle of rights,

3    which became an  asset of the bankruptcy estate, was limited to those of a junior lienholder,

4    such as to reinstate the senior liens on the property, redeem the property, or credit bid the

5    amount of its indebtedness at a trustee's sale.  The Court concluded that this bundle of rights

6    was not the same as having an ownership interest in the real property.  Moreover, the test

7    under Section 362(d)(1) or (d)(2) was not simply determining the value of the real property of

8    the non-debtor third party, the liens against the real property, and whether there was any

9    equity therein.  Indeed such a standard only applied if the debtor owned the real property,

10   which it did not.

11        Although the Court, in <u>A Partners</u>, stated that any assertion of pre-foreclosure

12   rights of reinstatement and redemption, after the bankruptcy case of the debtor had been filed,

13   would be a violation of the automatic stay, relying on <u>Harsh Investment Corp. v. Bialac (In re</u>

14   <u>Bialac)</u>, 712 F.2d 426, 432, (9th Cir. 1983), that conclusion did not determine whether the

15   automatic stay should be vacated in its case.  The Court stated that the debtor's interest in the

16   deed of trust did not extend the stay to the underlying real property.  Relying on the

17   Bankruptcy Appellate Decision of <u>First Federal Bank of California v. Cogar (In re Cogar)</u>,

18   210 B.R. 803, 812 (9th Cir. B.A.P. 1997), the Court also concluded that the senior lienholder

19   on the real property did not have a claim against the estate of the junior lienholder that could

20   be modified in the junior lienholder's plan of reorganization, even if the debtor's plan

21   transferred the underlying property to the debtor.

22        In reviewing the debtor's right to foreclose potentially before the senior

23   lienholder, the Court stated that such a right had no economic value, because the senior

24   lienholder had already started, and substantially completed, its non-judicial foreclosure sale.

25   <u>A Partners</u>, 344 B.R. at 123.  As to the debtor's ability to exercise its other rights to reinstate

26   the obligations or to redeem the property, the debtor had shown no financial ability to do so.

27   <u>Id.</u>  The Court then discussed the debtor's interest as being a contract right, and depending on

28

5

the facts and circumstances of each case, that contract right might have little or no value.[2]

The Court concluded that the value of the debtor's interest in the deed of trust, given the debtor's financial circumstance, was near zero.

As to the debtor's ability to bid at the foreclosure sale, the Court stated that the debtor's assertion of equity would mean that other parties would be present to bid at the sale and that the debtor would never get control of the real property, only the cash that it might receive on its deed of trust. However, that right never allowed the debtor to stop the foreclosure sale of the senior lieholder. A Partners, 344 B.R. at 125. Based on this analysis, the A Partners Court concluded that cause had been shown to vacate the automatic stay under Section 362 (d)(1).

Although REEL in this case argues bad faith, and requests that if the automatic stay is not vacated, that the case be dismissed as a bad faith filing, such a factually intensive finding normally requires a further evidentiary hearing. In re Hall, Bayoutree Associates, Ltd., 939 F.2d 802, 805-06 (9th Cir. 1991); In re Davis-Rice, 2007 WL 2534236 (Bankr. N.D.Cal. 2007) ("issues of good and bad faith generally require an evidentiary hearing"). The record in this case already supports vacatur of the automatic stay for cause. As noted in the case law discussed above, the Debtor's interest in a Deed of Trust on the Property is de minimus. Even if the Debtor were somehow able to join with the other interests in the Deed of Trust, and act in concert, the parties do not own the Property. The Debtor does not have the financial ability to reinstate or redeem REEL's senior lien. It is unclear whether the Debtor would be able to acquire the Property at any duly scheduled non-judicial foreclosure sale of the Property. The Debtor's interest in the Deed of Trust is of little

---

**2** The Court focused on number of cases that discussed the debtor's inability to perform because of the factual circumstances. In one case, the debtor was unable to perform on a contract that served as collateral for a loan from a secured creditor to the debtor. The Court, in that case, found that the contract and, hence, the collateral of the secured creditor, had no value. In another case, the debtor had utilized a diamond ring as collateral in a transaction, but the ring had disappeared without the debtor's knowledge. Although the creditor retained its security interest in the lost ring, the creditor's interest in the debtor's case was as an unsecured creditor, with the collateral having zero value. A Partners, 344 B.R. at 123-125.

6

1   or no value, since the Debtor simply has a 5 percent interest in a $2,400,000 obligation. That

2   obligation and the REEL obligation total $3,586,144.42, yet the value of the Property of the

3   third party, even pursuant to the Debtor's appraised value from 2006, is only the amount of

4   $2,025,000. The economic value of a 5 percent interest in a Deed of Trust which is only

5   partially secured, under the best of circumstances, is zero or close to zero.

6                 III. Conclusion

7         Because the Debtor has presented so little information, or so few facts, to

8   support its position, the Court concludes that the Debtor does not have the reasonable

9   probability of succeeding at any final hearing on the REEL Motion for Relief from Stay.

10   REEL presented a prima facie case as to why the automatic stay should be vacated for cause.

11   At that point, the burden shifted to the Debtor to present sufficient evidence that would

12   warrant a final evidentiary hearing. The Debtor did not do that. As a result, the automatic

13   stay must be vacated for cause under Section 362 (d)(1). REEL shall submit a form of order.

14

15         Dated this 25th day of July, 2008.

16

17

18                    Sarah Sharer Curley

19                    United States BAnkruptcy Judge

20

21

22

23

24

25

26

27

28

7